UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

GARRY WAYNE WHITE,          )
Institutional ID No. 622752,          )
SID No. 2077303,          )
Previous TDCJ Nos. 443265, 960983,          )
          )
          Plaintiff,          )
          )
v.          )          CIVIL ACTION NO.
          )          5:08-CV-226-BG
TDCJ EMPLOYEES,          )          ECF
*et* al.,          )
          )
          Defendants.          )

## REPORT AND RECOMMENDATION

### I.    Procedural History

Appearing *pro se* and *in forma pauperis*, Plaintiff Garry Wayne White brought this action

pursuant to 42 U.S.C. § 1983  complaining that Defendants violated his constitutional rights during

his incarceration by the Texas Department of Criminal Justice (TDCJ) at the John T. Montford Unit.

The United States District Court transferred the case to the United States Magistrate Judge for

further proceedings.  The order directed that the case be transferred back to the docket of the United

States District Court if either the plaintiff or a defendant did not consent to proceed before this court.

The United States Magistrate Judge conducted a hearing pursuant to *Spears v. McCotter*, 766 F.2d

179, 181-82 (5th Cir. 1985), and offered White an opportunity to consent to the jurisdiction of the

United States Magistrate Judge.  White declined to consent to the court's jurisdiction.

After reviewing White's complaint, his amended complaint, his testimony at the *Spears*

hearing, and authenticated records from TDCJ, this court determined that White had stated claims

of constitutional violation sufficient to require an answer or other responsive pleading by the

Defendants.  Thereafter the Defendants filed a motion pursuant to Fed. R. Civ. P. 12(b)(6) seeking dismissal of certain claims on grounds that White had failed to state claims upon which relief can be granted.  Because White declined to consent to the jurisdiction of the Magistrate Judge, transfer of this action to the District Court is appropriate.  Pursuant to the order entered on April 29, 2008, the undersigned files this Report and Recommendation.  The undersigned recommends that the District Court grant in part and deny in part Defendants' Rule 12(b)(6) motion and that the court dismiss certain claims pursuant to 28 U.S.C. § 1915.

II.    <u>Standard of Review</u>

A motion brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the court to consider the plaintiff's claims on the pleadings and dismiss any claim the plaintiff has asserted if such claim fails to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  The court is strictly limited to the parties' pleadings when considering a Rule 12(b)(6) motion.  *Baker v. Putnal* 75 F.3d 190, 196 (5th Cir. 1996).  The court must, however, also consider testimony that the plaintiff may have provided at a *Spears* hearing.  *See Eason v. Holt*, 73 F.3d 600, 602-03 (5th Cir. 1996) (testimony from the *Spears* hearing becomes part of the plaintiff's complaint).

The Fifth Circuit Court of Appeals has directed that a motion to dismiss under Rule 12(b)(6) for failure to state a claim is "'viewed with disfavor and is rarely granted.'" *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004) (quoting *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).  Thus, the court must liberally construe the plaintiff's complaint in his favor, assume the truth of all well-pleaded facts, and construe them in the light most favorable to the plaintiff.  *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002) (citations omitted).  The plaintiff's

2

claims survive a Rule 12(b)(6) motion if the plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### III.   White's Pleadings

White identifies the Defendants as Warden Terry D. Tucker, Officer Roeert Romero (R. Romero), Officer Sona Romero (S. Romero), Major Joel A. Gauna, and Nurse Practitioner (NP) Wilson.   Much of what White presented in his complaint and amended complaint and at the *Spears* hearing is nonsensical and confusing.   Nonetheless, liberally construing his allegations, as the court must, he alleges that prison officials violated his due process rights as well as his First and Eighth Amendment rights.   White complains of the diet provided him and of non-specific disciplinary cases filed against him.   He claims officials have retaliated against him and harassed him because of what "those Muslims did in New York City."   He claims S. Romero retaliated against him by taking items of his property, including legal books, his prayer cap, and his prayer beads and that the taking of those items violated his constitutional right to practice his religion as well as deprivation of property without due process of law.

White further contends in his amended complaint that Defendant S. Romero told Defendant R. Romero on July 12, 2007, that he should come back to the prison on the following day and that she told R. Romero to "jump on him."   White charges R. Romero, specifically, with using excessive force against him the following day – July 13, 2007.   He claims that as he was walking out of the day room on that day, R. Romero and other officers "jumped" on him.   He further claims that R. Romero "got [his] hair" and hit his face on the floor which resulted in a cut to his eye.

In regard to Defendant Tucker, a warden at the prison, and Defendant Gauna, an officer at the prison, White indicates that they failed to adequately address his grievances.   Finally, he claims

Defendant Wilson, a member of medical staff at the prison, acted with deliberate indifference to his serious medical needs.

**IV.**     **Defendants' Arguments**

Defendants seek dismissal on a number of grounds.  They contend: (1) the court cannot grant the relief White seeks; (2) White failed to exhaust administrative remedies as to Defendants Tucker, Gauna, and Wilson; (3) White failed to allege personal involvement on the part of Defendants Tucker and Gauna; and (4) White alleged S. Romero participated in a conspiracy with R. Romero and that the conspiracy claim must be dismissed as a matter of law.

Defendants have not addressed White's claim that R. Romero used excessive force against him that resulted in injuries on July 13, 2007.

**V.**     **Discussion**

A.     *Entitlement to Relief and Exhaustion of Administrative Remedies*

Defendants contend White's request for relief is limited to (1) a request that the court order him transferred to another prison unit and (2) a request for a court order overturning disciplinary cases and restoring his line class status.  Citing precedent related to the "minimum intrusion policy" courts take with regard to prison administration, Defendants argue that the facts in this case do not represent the types of extraordinary circumstances that would mandate a federal court ordering the transfer of an inmate.  Defendants further argue that White's claims regarding his disciplinary cases are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

White, however, testified at the *Spears* hearing that he was also seeking monetary damages and a finding that Defendants violated his constitutional rights.  White has alleged that he suffered more than *de minimis* injuries as a result of the use of force by R. Romero.  White's

allegations regarding the use of force, which the Defendants' did not address in their motion, states a plausible claim that could, if proven, entitle White to the declaratory and monetary relief he requested at the *Spears* hearing.

The Defendants' next argument – that White failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act (PLRA) – does not provide grounds for dismissal.  Defendants argue that White failed to exhaust administrative remedies as to his claims against Defendants Tucker, Gauna, and Wilson.  Because Defendants' motion to dismiss White's claims against Defendants Tucker, Gauna, and Wilson should be granted on other grounds discussed below, the court need not reach Defendants' argument on this point.

In addition and in the alternative, it would be improper for the court to dismiss White's claims on grounds that he failed to exhaust administrative remedies.  At this stage in the litigation the court is limited to the allegations in the plaintiff's pleadings; the court may consider only the parties' pleadings when considering a Rule 12(b)(6) motion.  *Baker*, 75 F.3d at 196. Although Defendants are correct in arguing that the PLRA mandates exhaustion of administrative remedies prior to filing a federal claim, *Clifford v. Gibbs*, 298 F.3d 238, 332 (5th Cir. 2002) (citing 42 U.S.C. § 1997e(a)), the plaintiff is not required to specifically plead or demonstrate exhaustion of administrative remedies; to the contrary, "failure to exhaust is an affirmative defense . . .." *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007).  A complaint is subject to dismissal under Rule 12(b)(6) only when the allegations in the plaintiff's complaint establish the affirmative defense. *See Jones*, 549 U.S. at 215.  Nowhere in any of White's pleadings does he indicate he failed to exhaust administrative remedies.  Dismissal of any of White's claims under 12(b)(6) for failure to exhaust administrative remedies would be improper.  *See Jones*, 549 U.S. at  215-16; *see Baker*, 75 F.3d at 196 (the court may not look beyond the pleadings when ruling on a 12(b)(6) motion).

5

B.      *Lack of Personal Involvement*

Defendants argue that White has not alleged personal involvement on the part of Defendants Tucker and Gauna.  They point out that White alleges only that he wrote to them and advised them of alleged retaliation, and they argue that White cannot place liability upon Tucker and Gauna merely because they hold supervisory positions.  Defendants' argument has merit.

To state a cognizable cause of action under § 1983, the plaintiff must allege that the defendant was either personally involved in the alleged constitutional violation or that his acts are causally connected to the alleged constitutional violation.  *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)).  The plaintiff must specify personal involvement on the part of each defendant in order to state a claim which could entitle him to relief.  *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action").  Liability cannot be imposed against a defendant via a theory of *respondeat superior.  Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987).  Section 1983 does not provide a cause of action against supervisors based on the conduct of their subordinates.  *See Thompkins*, 828 F.2d at 303-04.  As the Defendants point out, White alleges only that he wrote to Defendants Tucker and Gauna about some of the constitutional violations he alleges.  Because White has not alleged personal involvement on the part of Defendants Tucker and Gauna, dismissal for failure to state a claim as to these two defendants is proper.

C.      *Conspiracy*

Defendants frame White's allegations against S. Romero as claims of conspiracy: "Plaintiff White seems to be alleging that Defendants Robert Romero and Sonja Romero conspired

to subject him to an excessive use of force, as his only claim against Sonja Romero is that she instructed Robert Romero to attack Plaintiff." (Defs.' Mot. 6.)  They argue that Plaintiff should not be permitted to "bootstrap the excessive force claims against Robert Romero to Sonja Romero" because she lacked the requisite personal involvement that would support a § 1983 claim.  Further, citing *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994), they argue that because R. Romero and S. Romero are members of the same collective entity, the conspiracy alleged in this case does not involve two people and should be dismissed as a matter of law.

        Defendants' motion to dismiss White's claims against S. Romero should be granted on grounds that White has failed to allege personal involvement and other facts that would support his claim.  White alleges that S. Romero "told Mr. Romero something for him to come back to job on 7-13-2007 to jump on  me and other officers too."  (Pl.'s Am. Compl. 3.)  The Fifth Circuit Court of Appeals has directed that the plaintiff must state specific facts rather than "mere conclusory allegations" to support a conspiracy claim in a § 1983 action.  *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986).  "Mere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim of federal conspiracy under 42 U.S.C.A. § 1983."  *Id.*  (internal quotations and citations omitted).  Although the court must accept as true the plaintiff's allegations and construe them in the light most favorable to the plaintiff, it will not "'strain to find inferences favorable to the plaintiff[]'" and "will not accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'"  *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. INspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).  White has alleged conclusory allegations rather than facts from which it might be inferred that conspiracy existed.  His claim must therefore be dismissed.

7

## VI.   **Alternative Grounds for Dismissal**

A**.**   *Standard for Dismissal Under 28 U.S.C. § 1915*

The directives of 28 U.S.C. § 1915 require the court to dismiss any claim brought *in forma pauperis* at any time once the court determines that the claim is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2) (emphasis added).  White filed his complaint *in forma pauperis*, and some of his claims, though not specifically addressed by Defendants in their motion, are frivolous and must be dismissed pursuant to § 1915(e)(2).

B.   *Claims of Harassment and Retaliation*

White's claims that  prison officials have harassed him and retaliated against him because of the attacks that occurred on September 11, 2001, must be dismissed with prejudice pursuant to § 1915(e)(2).  In regard to his claim of harassment, White alleges that prison officials have called him names and have classified him as a member of the Mandingo Warriors gang.  Although this court would certainly not condone harassment directed at a prisoner, as a general rule, allegations of mere harassment or verbal abuse do not state viable constitutional claims.  *Calhoun v. Hargrove*. 312 F.3d 730, 734 (5th Cir. 2002); *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993).

White expresses anger in his amended complaint that he is classified as a member of the Mandingo Warriors gang and complains in other documents he filed with the court that prison officials have classified him as a member of a security threat group because he is a member of the gang. He complains, "[I]mmediately following the September 11, 2001, attacks on America,

8

suddenly TDCJ-ID beg[a]n to harass, discriminate, and isolate the Mandingo Warriors." These complaints, which concern White's classification, are not viable. A prisoner's disagreement with his classification does not state a constitutional claim. *Neals v. Norwood,* 59 F.3d 530, 533 (5th Cir. 1995). The Fifth Circuit Court of Appeals has acknowledged that "[p]rison officials should be accorded the widest possible deference in classifying prisoners' custodial status as necessary to maintain security and preserve internal order." *Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008) (citations and internal quotations omitted).

White's allegation that he has suffered retaliation because of the attacks that occurred in New York City on September 11, 2001, is frivolous. "Mere conclusory allegations of retaliation [will not] withstand a proper motion for dismissal of the claim. The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (internal citations and quotations omitted). White's allegations are conclusory, and they do not show direct evidence of motivation or a chronology of events from which retaliation could plausibly be inferred.

White's allegations that S. Romero retaliated against him are frivolous. It is well established that a prison official may not retaliate against a prisoner for exercising constitutional rights or complaining about a prison official's misconduct. *See, e.g., Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). On the other hand, claims of retaliation are viewed by federal courts with skepticism and are carefully scrutinized in order to guard against the use of such claims as shields with which inmates may insulate themselves from disciplinary actions. *Id*. at 1166. A prisoner alleging retaliation must demonstrate that the alleged retaliation resulted in the violation of a constitutional right. *See Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996) (affirming dismissal of

retaliation claim because prisoner failed to demonstrate violation of a constitutional right).

White's claims of retaliation must be dismissed because none of the alleged retaliation resulted in the violation of a constitutional right.  White claims S. Romero retaliated against him by taking his legal books and testified that her actions caused him to miss deadlines in this action and in an action pending in the Amarillo Division.  The court's own records, however, demonstrate that White's claims do not have a basis in fact.  Despite the alleged retaliation, White has been able to access the courts in this division and in a number of other divisions, and he has not missed any deadlines in this case or in the action he filed in the Amarillo Division.

White also contends S. Romero retaliated against him by taking from him his religious books, his prayer cap, and his prayer beads, which prevented him from observing his religion. Based on the authenticated records and White's own testimony, the taking of his property was reasonably related to legitimate penological interests.  White testified that prison medical staff have placed him on suicide precautions and agreed that, when he is not on suicide precautions, his property is returned to him.  A prison regulation which impinges on an inmate's constitutional rights is valid if it is reasonably related to a legitimate penological interest.  *Turner v. Safley*, 482 U.S. 78, 107 (1987).

C.    *Due Process Claims*

White complains, generally, that prison officials have brought wrongful disciplinary cases against him.  A prisoner's claim for relief from a disciplinary conviction is not cognizable unless he can demonstrate that the findings from the disciplinary proceedings were overturned or otherwise invalidated.  *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (applying the holding in *Heck v. Humphrey,* 512 U.S. 477, 487 (1994), to prison disciplinary proceedings).  White has not

alleged that any of the disciplinary cases he complains about were overturned. His claims must therefore be dismissed; White may reassert his claims in the future if he is able to satisfy the conditions in *Heck*. *See Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996); *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994).

      D.    *Claims Regarding Diet*

      White's allegations regarding his diet and the food provided to him must be dismissed because they are frivolous and, in the alternative, he has failed to state a claim upon which relief can be granted. In his original complaint White contends he is a Muslim and does not eat pork and that he has a "special diet for egg free" and that officers do not "have [his] food trays right." He cites policy which he claims requires prison officials to provide a pork free dinner or supper at least every seventy-two hours.

      The First Amendment does not require that a prison respond to particularized religious dietary requests. *Baranowski v. Hart*, 486 F.3d 112, 122 (5th Cir. 2007); *see also Kahey v. Jones*, 836 F.2d 948, 950 (5th Cir. 1988). Denial of a specialized diet does not violate an inmate's First Amendment rights. *Baranowski*, 486 F.3d at 122 (citing *Kahey*, 836 F.2d at 950 and *Udey v. Kastner*, 805 F.2d 1218, 1221 (5th Cir. 1986)). In addition, White's claims are conclusory, and he has not alleged personal involvement or placed liability for the violations he alleges on any of the Defendants he has named in this lawsuit.

      E.    *Deliberate Indifference Claims*

      White claims Defendant Wilson told him something was wrong with his neck but that he (White) knew that the pain he felt originated in his shoulder rather than his neck. He claims he has been trying to get pain medication and to determine what is wrong with his shoulder, leg, knee, and back. At the *Spears* hearing, White retracted his statement and said that his neck was "messed

up" but that he still wanted to maintain a claim against Wilson because Wilson had not done a "thorough" job.

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). The plaintiff must allege that the defendants refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would demonstrate wanton disregard for a serious medical need. *Id*. at 755 (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Prison records of medical examinations, treatment, and medication therapy may rebut a prisoner's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

White's claim that Wilson's diagnosis was wrong because she believed the source of White's claim was in his neck rather than his shoulder does not state a constitutional claim. Even if the court were to assume, *arguendo*, that Wilson's diagnosis was incorrect, negligence or mistake in diagnosing or treating a medical condition does not rise to the level of an Eighth Amendment violation. *See Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). Likewise, White's claim that Wilson did not do a "thorough" job does not state a constitutional claim. Disagreement with medical opinion does not constitute an Eighth Amendment violation; "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976). "Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana,* 122 F.3d 286 (5th Cir. 1997). (citations omitted). Whether additional testing or treatment should be ordered is a classic example of medical judgment rather than cruel and unusual punishment. *Estelle,* 429 U.S. at 107.

## VII.   Recommendations

Defendants' motion to dismiss should be granted in part and denied in part. The motion

should be granted as to White's claims against Defendants Tucker, Gauna, and S. Romero. The

Defendants' motion should be denied on all other grounds and as to Defendant R. Romero. Pursuant

to 28 U.S.C. § 1915(e)(2), White's claims regarding harassment, retaliation, classification, due

process, and deliberate indifference should be dismissed. White's claims against R. Romero for use

of excessive force should proceed through the course of litigation.

**IV.**     <u>**Right to Object**</u>

A copy of this report and recommendation shall be served on all parties in the manner

provided by law. Any party who objects to any part of this report and recommendation must file

specific written objections within ten days after being served with a copy. *See* 28 U.S.C.

§ 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific

finding or recommendation to which objection is made, state the basis for the objection, and specify

the place in the magistrate judge's report and recommendation where the disputed determination is

found. An objection that merely incorporates by reference or refers to the briefing before the

magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved

party from appealing the factual findings and legal conclusions of the magistrate judge that are

accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED:      August 25, 2009.

NANCY M. KOENIG
United States Magistrate Judge

13